oral argument not to exceed 15 minutes per side. Mr. Wilhelm for the appellant. Good morning. May it please the court. Good morning. May it please the court. Just to let your honors know that I've changed my rebuttal time from five minutes to three minutes this morning. That's fine. Mr. Thank you, your honor. I missed the district court granted a certificate of appeal ability on a Miranda claim in this case, and Mr Wesson seeks expansion of the certificate of appeal ability for additional issues for his habeas appeal, including ineffective mitigation counsel and ineffective trial counsel for the handling of the jury waiver. Your honors at this stage. This is a threshold inquiry. Mr. Wesson doesn't need to demonstrate ultimately that he would prevail on the merits of a habeas appeal. Rather, the standard at this point is whether whether reasonable jurists would debate the district court's denial of the claim. In other words, does Mr. Wesson have a substantial constitutional violation? And additionally, for several of the claims that are before the court, there's the separate inquiry under slack versus McDaniel whether the district court was correct in its procedural ruling. Mr. Wesson. Council just Council out of curiosity. I'm just curious where the state proceeding is. Is that very far along? Is that have a year or two to go? Where's that proceeding? It is not very far along, Your Honor, as you're aware, it was remanded for the Atkins claim. And so far, the the government has able to get in an expert to examine Mr. Wesson due to COVID restrictions. And we have a status conference set for April with with a common police judge in Akron, possibly looking at July for a hearing, but we're still kind of up in the air on COVID considerations with that. I appreciate the point. Okay. All right. So do you want to start with the waiver point or the additional mitigation evidence? Yes, yes, sir. I believe that our jury waiver issue is the strongest of our request for the COA. We have a substantial constitutional claim. Mr. Wesson had a right to jury trial and we're alleging that his trial counsel misled him in the information that he gave him after Mr. Wesson waived agreed to waive jury rights. He changed his mind and he wanted to retract his waiver, but was said in his affidavit that we filed with state courts in the district court that his trial counsel told him it wasn't feasible that it was too late for him to do that. Mr. Wilhelm, so I've never, never liked the phrase self-serving affidavit. I've never, I've just thought, I don't, it seems like it's gilding the lily. You're allowed to file affidavits and presumably you only file them when they help. So I don't, I don't think it's much of a phrase, but there is something to the idea here that the record makes it clear that at a minimum, your client was not sure what to do in the jury jury waiver point, quite understandable, given the stakes. Um, you know, when you get the affidavit, I mean, this is pretty long after the fact that this comes in, isn't it something that we should require some additional evidence to support? Um, that, that just seems to make some sense. I mean, he obviously talked to his lawyer and lawyers usually are quite helpful in these habeas claims. Shouldn't we require that kind of supporting evidence before we reopen something so long after the fact? Uh, well, your honor, I believe that we did have some supporting evidence to, to give credence to Mr. Wesson's affidavit, um, attached to, we, we have trial counsel's file. We don't have trial counsel's cooperation at this point, but we do have their file through successor counsel through, we retained it through first post conviction counsel. They obtained it. And then there, there are, um, email exchanges between trial counsel and the mitigation expert, Dr. Smalden discussing the jury waiver, which do support, um, Mr. Wesson's. Can I ask you, can I ask you a technical point about the affidavit? It says on the day I needed to sign the jury waiver. I changed my mind about it. My understanding is there were two days. There was the original waiver. And then the amended waiver that was signed the next day. Is that right? Six and seven or whatever. I, maybe I have the dates wrong. It's January 6th was the in-court colloquy. And my understanding is he goes before the court again on January 7th, there's an amended waiver. And if I understand your argument, your argument is that after the hearing on January 6th. And after he signed it, he changed, he was going to change his mind and was not informed by his counsel that he could do that or was affirmatively told he couldn't. Is the day that he's referring to in the affidavit, is that the seventh or is that the sixth? And if it's not clear, what are we supposed to do with that? Thank you for the question, Your Honor. I believe it is the sixth, but it's not completely clear. And this is a claim where we move for a hearing on the cause and prejudice question, because this claim was presented in a successor and the state courts declined jurisdiction. So it wasn't defaulted under the court's juris and gum and bias. So because the claim is default, we asked the court to give us a cause and prejudice thing to flesh out the details better. There is support from the two emails that we have from trial counsel. One is in December to Dr. Smaldon from trial. I think we lost you there, Mr. Wilhelm. Am I back? Yeah. Okay. And then the second email, Your Honor, is just the one that was dated the seventh, which is the day of the amended waiver, where it says trial counsel says in the email that Mr. Wilson has changed his mind several times, but the matter was entered. So I think that this would case would be most appropriate for a hearing on the cause and prejudice issue to bring trial counsel in and to bring Mr. Wesson in and to try to flesh out the specific details. It may be that Mr. Wesson's change of mind. I guess my question is the affidavit isn't clear to me that he changed his mind after the hearing and after he was asked and he went through the colloquy with the judge and the judge made sure that he was waiving his rights. I mean, if the affidavit isn't clear that it was after that hearing, I don't see how you have any evidence that supports your argument. Well, it does say on the day that he signed the waiver, he was told by trial counsel that it was too late. And granted, the fact that there was a colloquy would cut against the prejudice analysis, admittedly. But I don't think it ends the prejudice analysis because we're dealing again with a client who has low IQ, cognitive limitations, trouble with language. And it's I think it would be worth a hearing to flesh out whether when he was told by counsel. And if he was told before the colloquy, that might we don't have a jury waiver claim, but we do have an ineffective counsel claim. So the issue was counsel ineffective in their advisement of Mr. Wesson. And if they gave him the wrong information that he couldn't take back his waiver once he signed the form the first time with his level of low intellect and concrete thinking, that may have been prejudicial enough to convince him that he wasn't able to take it back. Because if we look at the actual colloquy itself, Mr. Wesson does ask the court a question. He actually pauses and he asked his counsel a question and they come on the record with it. And it deals with appellate rights. So it may be that Mr. Wesson believe that the act of signing a form made it conclusive and that trial counsel misled him by saying that. So with regard to ineffective post-conviction counsel and the cause and prejudice inquiry, we did move for a hearing in our motion that was ECF 47. And that motion was resolved in this final order that's before the court now, which is ECF 51, the memorandum opinion in order. So the hearing questions were resolved at the same time the court resolved the other issues in this final appealable order. And if we were to take a habeas appeal, we would be appealing the cause and prejudice issue. And we could argue that a remand to the district court would be appropriate and that reasonable jurists would have granted a hearing. Do you have a case in which someone prevailed on a claim of this type with just an affidavit by the criminal defendant? The client made a knowing, intelligent waiver. There's a big body of case law on that, but not your honor. No, I'm not familiar dealing with a client who wanted to take back his waiver after he was told, you know, sign the form and it was done. Well, on the, on the second argument, the, the obvious thing you have to come to grips with is whether this additional evidence and mitigation is cumulative of the sister's testimony. So why don't you go to that? Um, yes, your honor. Um, at trial council put on, um, Mr. Wesson's sister, Yvette, and also, um, Dr. Smallton, the psychologist, the, the themes that were dealt with were chaos, neglect, poverty that Mr. Wesson grew up in, alcohol exposure, low IQ, some head injuries. But what the, what was aware, what was missing from that is a separate picture, uh, of Mr. Wesson making efforts to get through life, struggling to succeed. Um, there was mitigation that was omitted from, um, an expert, Dr. Bartolos, who would have testified to Mr. Wesson's good adjustment in prison, which would, which would not have been cumulative. There's, um, testimony from an employer named Edgar Lee. And although it was a part-time job and the district court sort of dismissed it on that basis that he only had a part-time job with Mr. Lee, but Mr. Wesson really had no opportunities for extended employment very much. He was in prison, he got out, and then he went back in prison with this crime. So, um, I think missing from the mitigation case was information that could have been culled from the employer and, um, the prison records and the other, the community mental health records that Mr. Wesson was trying to redeem himself as best as he could, but he ran into a failure to gain steady employment and he relapsed into depression and alcohol and wound up committing, um, the instant offense. Additionally, um, there were some, um, there were two branches in this family, Your Honor. One was, um, one was in the Northeast Ohio area in Michigan where people stayed and they sort of became mired in the poverty and the chaos and the alcohol abuse. But Mr. Wesson's cousins were able to get away from that and move out to Los Angeles and thrive. Um, his cousin Herb is a, was a city councilman and he had, um, another cousin who was in the California assembly. And I think that those witnesses would have been of a strong character to show a contrast that if Mr. Wesson had been able to get, um, away from his instant environment, he would have had maybe not, obviously not a chance to be as successful as they were due to his intellectual limitations, but he could have had a life. He could have, um, uh, succeeded to some extent and, you know, it is a blue collar job and trying to make it outside. So I think that we got a picture of Mr. Wesson why he failed, but we didn't get a picture of Mr. Wesson that he tried to extricate himself from his circumstances and that he was amenable to adjustment in prison. And I do think that simply having, um, just one witness, although it's not necessarily per se ineffective, there is value to having, um, additional witnesses to come forward, to humanize the defendant, to humanize Mr. Wesson. And again, he could have put on some pretty impressive witnesses to show a big contrast, which plays into the affidavit of his cousin, Sharon Clark, who opined that Mr. Wesson came to live with her family and she wishes that they could have kept him because she feels that he could have stayed out of the trouble if that had happened. Um, so I think that the, the mitigation evidence is, is, um, not so cumulative and the additional information would have added value, um, to the sentencers, uh, equation of weight. Does EDPA apply to the lack of prejudice point? It does for some claims, your honor. Some of the claims were adjudicated on the merits raised in the first post conviction and some were raised in the successor post conviction. So we are limited to the state court record for some of the mitigation claims in the request for the COA. And the argument is, the argument is, is it, and the argument is a failure to investigate. Trial counsel didn't know about any of these people or they did and chose not to put them on. A failure to investigate, I think is better put that these witnesses were not contacted. Um, they may have been on a list somewhere, but they were not contacted according to their affidavits until successor post conviction and habeas counsel contacted them. And unless the court has any further questions, I'll stop at this point. Okay.  Willie. Thank you. Your honors, may it please the court. Charles are arguing on behalf of the warden. Your honors. The issue here is whether Mr. Wilhelm has shown that reasonable jurists could disagree with the district courts resolution of the ineffective assistance of counsel claims. We would like to focus on the district courts decision for that reason. As the court knows that the COA stage is not co extensive with, with the merits analysis, we would like to start with the focus on the district courts decision here. I think it's pretty well. Our argument is pretty straightforward that Mr. Wilhelm hasn't shown a basis for finding that reasonable jurors would disagree with those resolutions. We are dealing perhaps it's an uphill battle. I mean, we are dealing with well settled law here. Ineffective assistance of counsel standard has been applied many times in capital cases. The procedural default questions really do not give rise to much controversy legally. There is concession here that there was a default. So the issue is really causing prejudice. With respect to the waiver claim, the district court found that Mr. Wesson was given he waived his rights three times either orally or in writing. The district court made findings that there was extensive discussion with his attorneys. The court gave him the trial court gave him thorough advice on his rights. And also the district court did note that the affidavit was quite was in 2015. If you add all these things together. How does all that process establish anything with respect to communications about changing your mind later? It actually, Your Honor, it would be reasonable to think that that would not be the controlling question here. Given the the evidence, the very compelling evidence on the record, the circumstances and the lateness of the affidavit that here it could be reasonably concluded that circumstances that the claim had no merit. And also that because of these circumstances, a reasonable jurist would not would not question that a reasonable jurist would would would not think that the possibility really could be called perhaps speculation. A reasonable jurist would not think that would be sufficient to to overcome the district court's resolution of the case. Don't suggest that that this was a strategic or investigatory reason. Right. I mean, that's that's not that's not a record claim. If I if I understand the claim, Your Honor, here is that once again, the claim is that Mr. Wesson wanted to change his mind and he was given defective advice by his attorney that he could not change his mind. And given the given the idea that, again, that the cited by the district court, the number of times he actually did waive either writing or orally and the advice he received in court and also from apparently from the discussions on the record to indicate that Mr. Wesson had a thorough understanding of what he was waiving and that he did not. Most importantly, that that he he could he could not be made to waive his rights. In other words, he this was his choice, a choice for him to make based on this. Again, the circumstances, it's compelling that his belated his belated claim that somehow he didn't know that he could he could change his mind or that it was now conclusive. It's the district judge rejected that. And based on the findings of the district judge, again, we would submit that there's really no reasonable question here as to resolution. Do you agree? Right. The email the email shows that at least he was waiver. We know he was wavering. Right. I mean, there's no his own counsel says he was wavering. Yes, yes. Yes, your honor. I think it's pretty plain that that that that's the case. But again, and again, it's understandable. It's a monument. It's a it's a momentous decision or an important decision. But what what do we do? I'm curious about the timing. And I go back to this timing question. The email. One of the emails I think is sent on the day, January 7th, the afternoon of the 7th, which is the after the amended waiver has been signed. So I don't what if we construe the email to be, I guess, consistent with the idea that he was wavering after the the the main colloquy on the January the 6th. After that, which is consistent, I suppose. I mean, I don't know how we construe the evidence here, but consistent with the idea that maybe he did want to want to waive on the day of the amended hearing or meant the hearing on the amended waiver. And there is no real colloquy on that day. And his attorney very well might have said, look, we already entered this thing yesterday. You can't change your mind now. I mean, why is that story not kind of makes sense. Again, Your Honor, what I think it comes down to is the focus here is the attorney's conduct. And it's not the focus is not whether Mr. Wesson had reservations or he didn't he really wasn't sure about what he was doing. The focus is the attorney's conduct. There is no evidence, really, that the that the attorney gave him faulty advice. There really is no evidence that the attorney contradicted his previous advice and said, no, it's too late. You can't. You cannot Is there no evidence or is it just not great evidence. I mean, he says in the affidavit, they said I could not take my jury waiver back because it was too late. Now, at some point, that's not correct. Right. He could have taken it back. I mean, yes, some that's evidence. I don't know if it's great evidence, but it's evidence, isn't it. Yes. Yes, Your Honor. Again, to make I don't want to to. Again, I don't want to seem seemingly delve very deeply into the merits. I mean, we are talking about the COA stage, but but is it reasonable. Was it was it reasonable. Well, first of all, was the district courts essential rejection of that evidence. Was that was that supported by the record. Yes. And is there any reasonable basis to question the district judge's reliance on the record and resolving that particular question. And at the COA stage, I think we would submit that. No, there was no reasonable Judges finding district judges finding was well supported by And they're really argues that that what is important to this is not only Is not only how the council would have responded, but how the council would have responded in the context of a defendant with fetal alcohol syndrome. And the difficulties of understanding. So isn't part of the calculus of the evidence. The fact that, yes, he did sign. He did have these two times before the court. But the, the thought processes of somebody with fetal alcohol syndrome suggest that he could very well have believed a comment by his own counsel that it's too late. To be the concrete rule and it was too late and he could do nothing further. Doesn't that play a role in this type of case. Yes, it does, Your Honor. But at the same time, the focus really is on the council's conduct this council first and we presume The law says we presume that counsel did his job effectively. So we can presume that counsel was aware of Mr. Wesson's intellectual limit Limitations that he was aware of Mr. Wesson circumstances when he gave him advice. That's something we can presume because the law says we can presume that counsel effectively took that into consideration again. If we take a look at the presumption that counsel is effective the council was aware of this, we take a look at the evidence. A little bit with your statement of the standard because the The expectation is, is that that counsel may make strategic or investigatory decisions and isn't that what kind of gives the leg up on the assumption of proper action by the court. By that council, but that's not what we're talking about here. There's no claim that it was an investigatory decision or a strategic decision. It's very simply did counsel say you can't do that in a way that made this man with with capacity problems believe that it was impossible to withdraw his waiver. Your Honor, we submit, Your Honor, that the presumption goes a little bit further than simply strategic decisions. Well, I think one key fact is to say, as the courts have said is we cannot look at in hindsight, as to and judge from hindsight, what an attorney has done. Again, I think we can, and not only the presumption that counsel was a Mr. Wesson's intellectual disabilities, his limitations, counsel conducted investigations, counsel hired an expert who testified extensively gave Mr. Wesson extensive tests. So I think there's plenty of evidence to show that counsel had understanding of Mr. Wesson situation and counsel could would reasonably have take take taken that into the calculation in terms of giving him giving him advice. Again, if we focus on the key factual allegation, namely that counsel gave him erroneous advice. Then if there's there's lots and lots in the record to indicate that to reject that that allegation and to find that that didn't happen. And once again, if that's the case, that if there is, if that's if it's a finding by the district court, it's well supported by the record, then it that juncture is sustainable and more importantly in the COA stage, we asked the question, is there any reasonable basis to to the undermines that judgment. If there is, I know you're short on time, but could you address the mitigation issues and yes, and give me your best explanation for how the cumulative evidence standard applies in this case. You know, I fall back, Your Honor, on this court's decisions that it surveyed cases and talk about what we mean by cumulative evidence. Is it something different in kind or strength from the evidence presented. Well, clearly here in the warden's perspective, the warden's view, it did not. It was the same kind of evidence, and it was not certainly the evidence allegedly omitted certainly was not greater in strength. Mr. Wesson presented his case really through the testimony of Dr. Smalldon, his expert. And if one takes a look at the independent sentencing evaluation of the Supreme Court of Ohio, that evidence was was found to be, I will say, substantial. I think the Ohio Supreme Court recognized that this was entitled to weight. The Supreme Court carefully reviewed the mitigating evidence, and that was a category that they felt under the catchall, if you will, in Ohio. The Ohio Supreme Court felt that evidence did have weight. And under that circumstance, again, it would seem that the evidence that was presented was of the same type of the alleged and it was substantial. It would be very reasonable to find that the omitted evidence wasn't. Here's what I struggle with. The concept of cumulative, barring any additional evidence coming in, a jury or even a panel of judges who hears from one witness that this person was trying to make the best of a difficult situation and tried to do it this way. That's one thing when you're considering punishment. It's like I've got a neighbor who says I'm a good person. But if you're a juror or a panel of judges listening to that, that's, well, yeah, everybody may have a neighbor who thinks they're a good guy. It's when you get the teacher who says, in addition, yes, and here's how he struggled in school. And then you get the pastor who says he came to me to talk about his struggles. And then you get the nieces or nephews for whom this person undertook efforts to aid them and to warn them away from the lifestyle. I'm struggling with calling that cumulative because what that does is really presents a picture of somebody who's not just accepted by the neighbor next door or the one person that he knew well, but is in fact regarded by the community as making the kind of effort that's necessary to overcome his circumstances. Why is that? Why, in your estimation, is that not admissible evidence that really matters at the mitigation stage? Your Honor, I would think, Your Honor, that, again, if we focus on what counsel did, how did counsel choose to put that evidence on? Once you describe there, he put on, he put it on through the testimony of an expert. And there are some advantages to that because the expert can talk about the extensive investigation of the defendant's background that he's conducted. The expert can talk a lot about what that investigation revealed in terms of mitigating circumstances that would be very helpful to the defendant. Counsel can reasonably decide that putting this evidence on through an expert has advantages. That's exactly what Wesson's counsel did. He, I think it's plain from the record. Isn't that just a cold record? I mean, the expert's telling you, here's what's wrong with his mind. Here's what the test shows. We've got some people who say he had these problems. Isn't it very different to have the testimony or affidavit of the pastor or of the teacher or of the relative that tells you something about the problems in this person's life or the way they have sought to overcome their circumstances? How do you overcome that that matters to the decision of what type of punishment is important or appropriate? Your Honor, can we say this, that could a reasonable counsel decide that it would be better or perhaps better for the defendant to present this type of evidence through an expert versus actually calling a number of the witnesses to testify directly? A reasonable counsel could conclude that's the case. Here, we have to remember, he did present. If the reasonable counsel had looked at what those people were going to say, wouldn't that be a necessary underpinning to that decision? Here in the record, it's very clear that Dr. Smalden and counsel did conduct a thorough investigation of Mr. Wesson's background. I think that's plain from the record. Also, again, it bears emphasis that he did present a witness. He did present a witness from the family. Again, counsel can reasonably conclude that this witness will buttress the information that Dr. Smalden obtained and relied on. Here, Your Honor, there was no real dispute here as to these circumstances. Counsel did a great job of establishing Mr. Wesson's limitations and, if you will, use the word deprived. His background was well, well demonstrated to the panel. Thank you. I appreciate your arguments and responses to our questions. Mr. Wilhelm, you've got your rebuttal. Thank you, Your Honor. Yes, Your Honor. When we take a look at Mr. Wesson's affidavit in the supporting documentation, his story does make sense that he may actually have retracted the waiver and been told by counsel that he can't retract the waiver after he signed it. And this is the case, similar to the Atkins claim, where the district court— the lawyer to support the theory. I mean, that's not usually a problem, particularly in a capital case. It happens all the time. Usually that's the best evidence, the evidence from the lawyer. Yes, Your Honor, but oftentimes that evidence is developed at a hearing and not volunteered. Well, no, but that's— It doesn't always come easily. That's the whole gatekeeping point. That's the whole gatekeeping point. I mean, this will go on forever if all that's required is anything. I mean, right? I mean, you have to appreciate that consideration. But I think we have more than anything. I think we do have Mr. Wesson's flat assertion of what happened, and then we have supporting documentation from trial counsel to the expert that Mr. Willey noted was relied on. And it says that he wanted a jury trial, and it establishes that he agreed to waive, but he changed his mind since then. And then trial counsel simply says, rather conclusively, but it was entered. Judge Polster perfectly understood the point. He said the supporting evidence simply shows he wasn't sure. It was a hard choice. Of course it was a hard choice. Well, I disagree that Judge Polster was saying—obviously, yes, it was a hard choice. But I think what Judge Polster ultimately said was that the only conclusive evidence that Mr. Wesson wanted to change his mind comes from the affidavit. But I say if you take it in context, if we take that affidavit in context with everything that was happening with the other emails, it creates a fact question that would be proper for development at a hearing where we could hear from trial counsel. So with that, Your Honors, I'll conclude unless the Court has any more questions. We ask the Court to expand the Certificate of Appealability. Thank you, Mr. Wilhelm. Thank you, Mr. Willey. As always, we appreciate your very helpful briefs and arguments. And Mr. Wilhelm, thank you for your representation with Mr. Wesson. It's obviously a great service to him and to the system in general. Thanks to both of you. The case will be submitted.